| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |
| ------------------------------------------------------- x<br>*In re:*<br><br>Endo International plc, *et al.*,<br><br>    *Debtors.*[1]<br>------------------------------------------------------- x<br><br>Travis Blankenship, Next Friend and<br>Guardian of Minor Child Z.D.B.,<br><br>    *Plaintiff*,<br><br>    v.<br><br>Endo International plc, *et al.*,<br><br>    *Defendants*.<br>------------------------------------------------------- x | Chapter 11<br><br>Case No. 22-22549 (JLG)<br><br>(Jointly Administered)<br><br><br><br><br>Adv. P. No. 23-07007 (JLG) |

**MEMORANDUM DECISION AND ORDER GRANTING MOTIONS OF THE
OFFICIAL COMMITTEE OF OPIOID CLAIMANTS, OFFICIAL COMMITTEE
OF UNSECURED CREDITORS, AND AD HOC FIRST LIEN GROUP TO
<u>INTERVENE IN ADVERSARY PROCEEDING</u>**

**A P P E A R A N C E S :**

AKIN GUMP STRAUSS HAUER & FELD LLP
*Special Counsel to the Official Committee of Opioid Claimants*
One Bryant Park
New York, New York 10036
<u>By:</u>    Arik Preis, Esq.
        Mitchell P. Hurley, Esq.
        Theodore James Salwen, Esq.
        Brooks Barker, Esq.

---

[1] The last four digits of Endo International plc's tax identification number are 3755. Due to the large number of debtors in these Chapter 11 Cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring rakroll.com/Endo. The location of the Debtors' service address for purposes of these Chapter 11 Cases is: 1400 Atwater Drive, Malvern, PA 19355.

2001 K Street NW
Washington, DC 20006
<u>By:</u>    Kate Doorley, Esq.

KRAMER LEVIN NAFTALIS & FRANKEL LLP
*Counsel to the Official Committee of Unsecured Creditors*
1177 Avenue of the Americas
New York, New York 10036
<u>By:</u>    Kenneth H. Eckstein, Esq.
Rachael L. Ringer, Esq.
David E. Blabey, Jr., Esq.
Megan M. Wasson, Esq.

GIBSON, DUNN & CRUTCHER LLP
*Counsel to the Ad Hoc First Lien Group*
200 Park Avenue
New York, New York 10166
<u>By:</u>    Scott J. Greenberg, Esq.
Robert F. Serio, Esq.
May Beth Maloney, Esq.
Michael J. Cohen, Esq.
Joshua K. Brody, Esq.
William J. Moccia, Esq.

NEW, TAYLOR & ASSOCIATES
*Counsel to the Plaintiff*
PO Box 5516
Beckley, West Virginia 25801
<u>By:</u>    Stephen P. New, Esq. (Pro Hac Vice)

**<u>HON. JAMES L. GARRITY, JR.</u>**
**<u>U.S. BANKRUPTCY JUDGE</u>**

### Introduction[2]

Before the Court are motions (each a "Motion" and collectively, the "Motions") filed by the Official Committee of Opioid Claimants (the "OCC")[3] and the Official Committee of

---

[2]  Capitalized terms not defined herein have the meanings ascribed to them in the Stipulation and the Resolution Term Sheets. References to "ECF No. __" are references to the electronic docket in the main chapter 11 case, No. 22-22549. References to "AP ECF No. __" are references to the electronic docket in this adversary proceeding, No. 23-07007.

[3]  *Motion to Intervene by the Official Committee of Opioid Claimants*, AP ECF No. 42 (the "OCC Motion").

Unsecured Creditors (the "UCC"[4] and, together with the OCC, the "Committees") appointed in these Chapter 11 Cases, and an ad hoc group consisting primarily of lenders holding prepetition first lien indebtedness (the "Ad Hoc First Lien Group"[5] and, together with the OCC and the UCC, the "Movants"). Each Movant seeks the entry of an order pursuant to section 1109(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 24 of the Federal Rules of Civil Procedure ("Rule 24"), as made applicable to this proceeding by Rule 7024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), allowing it to intervene in this adversary proceeding (the "Adversary Proceeding"). Travis Blankenship, Next Friend and Guardian of Minor Child Z.D.B., the plaintiff herein (the "Plaintiff"), filed an omnibus objection (the "Omnibus Objection")[6] to the Motions. Each Movant filed a reply to the Omnibus Objection in support of its Motion.[7]

The Court heard arguments on the Motions. For the reasons set forth herein, the Court overrules the Omnibus Objection and grants the Motions.

## Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States

---

[4] *Motion of the Official Committee of Unsecured Creditors to Intervene in This Adversary Proceeding*, AP ECF No. 43 (the "UCC Motion").

[5] *Motion to Intervene by Ad Hoc First Lien Group*, AP ECF No. 54 (the "Ad Hoc First Lien Group Motion").

[6] *Omnibus Objection and Response in Opposition to the OCC, UCC, and Ad Hoc First Lien Group's Motions to Intervene*, AP ECF No. 71.

[7] *Reply of the Official Committee of Opioid Claimants of Endo International plc, et al., in Support of Motion to Intervene by the Official Committee of Opioid Claimants*, AP ECF No. 82; *Reply in Support of Motion of the Official Committee of Unsecured Creditors to Intervene in Adversary Proceeding*, AP ECF No. 81 (the "UCC Reply"); *Reply in Support of Motion to Intervene by Ad Hoc First Lien Group*, AP ECF No. 80.

District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

**The Chapter 11 Cases**

On August 16, 2022 (the "Petition Date"), Endo International plc and certain of its affiliates (the "Debtors") commenced voluntary cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in this Court. The Chapter 11 Cases are jointly administered. The Debtors are authorized to continue to operate their businesses and to manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 2, 2022, the Office of the United States Trustee appointed each of the Committees in the Chapter 11 Cases.[8] The constituencies of the OCC and UCC consist of, respectively, the victims of the nationwide opioid crisis (the "Opioid Claimants") and the Debtors' general unsecured creditors (the "General Unsecured Creditors"). No trustee or examiner has been appointed in the cases.

On November 23, 2022, the Debtors filed a motion to approve bidding procedures and to authorize a sale (the "Proposed Sale") of substantially all of the Debtors' assets (the "Bidding Procedures Motion").[9] The UCC and OCC initially objected to the motion.[10] Simultaneously, the

---

[8] *Notice of Appointment of Official Committee of Opioid Claimants*, ECF No. 163; *Notice of Appointment of Official Committee of Unsecured Creditors*, ECF No. 161.

[9] *See Debtors' Motion for an Order (I) Establishing Bidding, Noticing, and Assumption and Assignment Procedures, (II) Approving Certain Transaction Steps, (III) Approving the Sale of Substantially all of the Debtors' Assets and (IV) Granting Related Relief*, ECF No. 728.

[10] *See Objection of the Official Committee of Opioid Claimants to the Debtors' Motion for an Order (I) Establishing Bidding, Noticing, and Assumption and Assignment Procedures, (II) Approving Certain Transaction Steps, (III) Approving the Sale of Substantially All of the Debtors' Assets and (IV) Granting Related Relief*, ECF No. 1145; *Objection of the Official Committee of Unsecured Creditors to the Debtors' Bidding Procedures and Sale Motion*, ECF No. 1144.

4

UCC and OCC conducted investigations of the Debtors under Bankruptcy Rule 2004, filed a joint motion seeking standing and authority to commence certain estate causes of action (the "Standing Motion"),[11] preliminarily prepared pleadings to commence additional estate causes of action, and engaged in other disputes with the Debtors and the Ad Hoc First Lien Group. OCC Motion ¶ 7; UCC Motion ¶ 6.

On January 26, 2023, the Court entered an order providing for mediation among certain parties to resolve multiple issues and disputes in the Chapter 11 Cases.[12] A number of parties, including the Debtors, the UCC, the OCC, and the Ad Hoc First Lien Group, participated in a protracted and often contentious mediation. OCC Motion ¶ 8; UCC Motion ¶ 7. After several weeks of mediation, the UCC, the OCC, and the Ad Hoc First Lien Group reached an agreement to resolve, among other things, the Committees' objections to the Bidding Procedures Motion and the Standing Motion. OCC Motion ¶ 9; UCC Motion ¶ 7. That settlement is embodied in a stipulation among the Debtors, the UCC, the OCC, and the Ad Hoc First Lien Group (the "Stipulation")[13] and, in particular, the UCC Resolution Term Sheet and the OCC Resolution Term Sheet (together, the "Resolution Term Sheets") embodied therein.[14]

Under the Proposed Sale, the Ad Hoc First Lien Group, through a newly formed entity, would serve as the Stalking Horse Bidder to effectuate a credit bid to acquire substantially all of

---

[11] *See, e.g., Motion of the Official Committee of Unsecured Creditors and the Official Committee of Opioid Claimants for (I) Entry of an Order Granting Leave, Standing, and Authority to Commence and Prosecute Certain Claims on Behalf of the Debtors and (II) Settlement Authority in Respect of Such Claims*, ECF No. 1243.

[12] *Stipulation and Order (A) Granting Mediation and (B) Referring Matters to Mediation*, ECF No. 1257; *Stipulation and Order Extending the Mediation*, ECF No. 1475; *Order Extending the Mediation*, ECF No. 1827.

[13] *Stipulation Among the Debtors, Official Committee of Unsecured Creditors, Official Committee of Opioid Claimants, and Ad Hoc First Lien Group Regarding Resolution of Joint Standing Motion and Related Matters*, ECF No. 1505.

[14] The UCC Resolution Term Sheet and the OCC Resolution Term Sheet are annexed as Exhibits 1 and 2, respectively, to the Stipulation.

5

the Debtors' assets, including the Debtors' product liability insurance policies (the "Policies") and the estates' interests in those Policies. Pursuant to the Stipulation and the Resolution Term Sheets, to the extent that the Stalking Horse Bidder is the winning bidder for the Debtors' assets at the conclusion of the Debtors' auction process, the Stalking Horse Bidder will purchase the Policies and transfer them to a trust established for the benefit of non-opioid unsecured creditors. UCC Resolution Term Sheet at 12-13. On February 27 and March 17, 2023, the Debtors revised their Bidding Procedures Motion.[15] After a hearing, the Court authorized and approved bidding procedures for the sale of substantially all of the Debtors' assets and thereafter entered the Bidding Procedures Order.[16]

**The Adversary Proceeding**

On March 3, 2023, the Plaintiff filed a complaint,[17] commencing this Adversary Proceeding. The Plaintiff filed an amended complaint on March 7, 2023.[18] On March 21, 2023, the Plaintiff filed a corrected amended complaint (the "Corrected Amended Complaint").[19]

The Plaintiff is a resident of Peterstown, Monroe County, West Virginia, and is the father and legal guardian of minor child Z.D.B. Corrected Amended Complaint ¶ 11. Z.D.B. was born with Neonatal Abstinence Syndrome ("NAS") as a result of his now-deceased mother's opioid use

---

[15] *Notice of Filing of Second Revised Proposed Order (I) Establishing Bidding, Noticing, and Assumption and Assignment Procedures, (II) Approving Certain Transaction Steps, and (III) Granting Related Relief*, ECF No. 1395; *Notice of Filing of Third Revised Proposed Order (I) Establishing Bidding, Noticing, and Assumption and Assignment Procedures, (II) Approving Certain Transaction Steps, and (III) Granting Related Relief*, ECF No. 1483.

[16] *Order (I) Establishing Bidding, Noticing, and Assumption and Assignment Procedures, (II) Approving Certain Transaction Steps, and (III) Granting Related Relief*, ECF No. 1765.

[17] *Complaint for Determination of Dischargeability and Objecting to Debtor's Discharge of Certain Debts*, AP ECF No. 1.

[18] *Complaint for Determination of Dischargeability and Objecting to Debtor's Discharge of Certain Debts*, AP ECF No. 2.

[19] *Corrected Amended Complaint*, AP ECF No. 4.

6

during pregnancy and, according to the Plaintiff, represents the NAS class of victims (the "NAS Claimants"). *Id.* ¶¶ 2, 4, 49. He contends that the NAS Claimants are "entitled" to the proceeds of the Policies and that their "rights should not be transferred or included in the [Proposed Sale] unless proper provisions and protections are included immediately." *Id.* ¶ 4. The Plaintiff alleges that the Policies cover opioid-related claims alleging NAS, and that the Debtors typically maintained, on an annual basis, $100,000,000 of product liability coverage, including a $25,000,000 self-insured retention. *Id.* ¶ 52.

In the Adversary Proceeding, the Plaintiff seeks

> a declaration of [the parties'] respective rights, duties and obligations under the Policies, including: (a) the extent to which the interests of Plaintiff and Debtors in said Policies or their rights thereunder are property of the estate under 11 U.S.C. § 541; . . . (b) the extent to which Plaintiff has interests in the Policies for limits of liability coverage consistent with prior courses of dealing with regard to these Policies, including pending settlements, some of which have concluded or will conclude, for claims that were in existence as of the Petition Date, utilizing, in part, policy proceeds, by agreement of the Debtors, creditors and the insurers; [and] (c) the insurance proceeds are not eligible for transfer to entities who cannot make claims under the Policies.

*Id.* ¶ 121.

On March 31, 2023, the Debtors filed a motion to dismiss the Corrected Amended Complaint or, in the alternative, to stay the Adversary Proceeding (the "Motion to Dismiss").[20] The hearing on the Motion to Dismiss is scheduled for May 11, 2023.

**<u>The Motions to Intervene</u>**

Each Movant contends that the Court should grant it leave to intervene in the Adversary Proceeding with full participation rights therein because it has timely filed its Motion, and, alternatively: (i) it has an unconditional right to intervene under Rule 24(a)(1) because it is a party

---

[20] *Memorandum of Law in Support of the Debtors' Motion to Dismiss or Stay the Amended Complaint*, AP ECF No. 9.

in interest under section 1109 of the Bankruptcy Code, *see* OCC Motion ¶ 19, UCC Motion ¶ 11, Ad Hoc First Lien Group Motion ¶ 6; and (ii) it is entitled to intervene as a matter of right under Rule 24(a)(2) because the relief the Plaintiff is seeking in the Adversary Proceeding may impact the resolutions reached among the OCC, the UCC, and the Ad Hoc First Lien Group in the Stipulation and the Resolution Term Sheets, *see* OCC Motion ¶ 21, UCC Reply ¶ 3, Ad Hoc First Lien Group Motion ¶ 7. Moreover, each Movant maintains that Rule 24(c)'s requirement that a motion to intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought," Fed. R. Civ. P. 24(c), is waived because it seeks to intervene to vindicate its rights under section 1109(b) of the Bankruptcy Code, not to assert claims in its own name or derivatively in the name of the Debtors' estates. *See* OCC Motion ¶ 22, UCC Motion ¶ 13, Ad Hoc First Lien Group Motion ¶ 8.

**The Omnibus Objection**

In its Omnibus Objection, the Plaintiff asserts that it is a direct conflict and breach of fiduciary duty for the OCC to intervene in the Adversary Proceeding. Omnibus Objection at 2. The OCC represents seven opioid claimant constituencies, including minor children who are suffering from NAS due to opioid exposure to the Debtors' products in utero. The Plaintiff complains that the OCC's position in the Adversary Proceeding is adverse to that of the minor children, that the OCC has not advocated for the NAS children in the entirety of this bankruptcy, and that it has subordinated NAS claims to other constituent groups of the OCC. *Id.* at 3. He maintains that the position that the OCC is taking in the Adversary Proceeding is at odds with the best interests of the NAS children because it has the potential to deprive the infant children of large sums of money that may be available under the Policies. He also asserts that in taking that position, the OCC is violating its fiduciary duty to advocate for its constituent groups without favor towards

8

or against any group. *Id.* The Plaintiff also asserts that the resolutions that the OCC and UCC reached in the Resolution Term Sheets did not truly account for the NAS claimants' interests. He maintains that the UCC and Ad Hoc First Lien Group are intervening in an effort to persuade the Court to permit the transfer of the Policies to unsecured creditors who are not entitled to the Proceeds of the Policies. *Id.* at 3-4.

The Court considers those matters below.

## **Discussion**

Rule 24 governs motions to intervene. Rule 24(a) addresses intervention as of right, Rule 24(b) addresses permissive intervention, and Rule 24(c) imposes procedural requirements on motions to intervene. "The applicant bears the burden of demonstrating that it meets the requirements for intervention." *Floyd v. City of New York*, 302 F.R.D. 69, 83 (S.D.N.Y. 2014) (citing *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978)), *aff'd*, 770 F.3d 1051 (2d Cir. 2014) (per curiam).

Rule 24(b) is not relevant herein, as the Movants assert that they are entitled to intervene in this Adversary Proceeding as a matter of right. Rule 24(a) provides that

> [o]n timely motion, the court must permit anyone to intervene who:
>
> (1) is given an unconditional right to intervene by a federal statute; or
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). In reviewing the merits of the Motions, the Court first considers the timeliness of the Motions.

The timeliness requirement under Rule 24(a) "is flexible and the decision is one entrusted to the district judge's sound discretion." *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593,

9

594-95 (2d Cir. 1986). In exercising that discretion and assessing the timeliness of a motion to intervene, courts consider factors that include

> (a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness.

*Royal Park Invs. SA/NV v. U.S. Bank Nat'l Assoc.*, 356 F. Supp. 3d 287, 293 (S.D.N.Y. 2018) (quoting *Floyd v. City of New York*, 770 F.3d 1051, 1058 (2d Cir. 2014)); *see Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 550 B.R. 241, 248 (Bankr. S.D.N.Y. 2016). The most significant criterion is whether the delay in moving for intervention has prejudiced any of the existing parties. *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 160 (S.D.N.Y. 2000) (quoting *United States v. IBM*, 62 F.R.D. 530, 541-42 (S.D.N.Y. 1974)).

The Adversary Proceeding is in its nascent stages, and the Movants' intervention will not prejudice the rights of any of the existing parties. The Movants have not delayed in seeking to intervene. Indeed, no hearings have taken place in the Adversary Proceeding, and no substantive relief has been granted. Denying the Motions would result in significant prejudice to each of the Movants because, as discussed below, each Movant has a financial stake in the Adversary Proceeding, as it implicates the Policies which are the subject of the Stipulation and the Resolution Term Sheets. No unusual circumstances exist militating against a finding of timeliness. In light of the foregoing, the Court finds that the Motions were timely filed. The Court now considers whether the Movants have demonstrated grounds for relief under Rule 24(a)(1) or (2).

In applying Rule 24(a)(1) to the Motions, the Court considers whether the Movants have "[been] given an unconditional right to intervene by a federal statute." Fed. R. Civ. P. 24(a)(1). Section 1109(b) of the Bankruptcy Code does just that. It states that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor,

10

an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). Section 1109(b) "provides parties in interest with 'an unconditional right to intervene' in adversary proceedings under chapter 11, pursuant to Fed. R. Civ. P. 24(a)(1)." *Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 180 (2d Cir. 2005) (quoting *Term Loan Holder Comm. v. Ozer Grp., L.L.C. (In re Caldor Corp.)*, 303 F.3d 161, 176 (2d Cir. 2002)); *see also Iridium India Telecom Ltd. v. Motorola, Inc.*, 165 F. App'x 878, 879 (2d Cir. 2005) (summary order); *Calpine Corp. v. Nevada Power Co. (In re Calpine Corp.)*, 354 B.R. 45, 48 (Bankr. S.D.N.Y. 2006), *aff'd*, 365 B.R. 401 (S.D.N.Y. 2007). Each member of the Ad Hoc First Lien Group is a creditor that is a party in interest under section 1109 with an unconditional right to intervene in the Adversary Proceeding. *In re Caldor Corp.*, 303 F.3d at 162-63, 176 (holding that the plain text of section 1109(b) of the Bankruptcy Code creates an unconditional statutory right for creditors such as Term Loan Holder Committee in that case to intervene); *Adelphia Commc'ns Corp. v. Rigas (In re Adelphia Commc'ns Corp.)*, 285 B.R. 848, 850-51 (Bankr. S.D.N.Y. 2002) (granting motion of creditor and equity holder committees to intervene in adversary proceeding and finding that "the intervenors should have the rights in this adversary proceeding generally corresponding to those that they have under section 1109(b) in the umbrella cases," namely that "they may 'raise and may appear and be heard on any issue'" (quoting 11 U.S.C. § 1109(b))). The OCC and UCC, as official committees herein owing fiduciary duties to the Opioid Claimants and General Unsecured Creditors, respectively, likewise are parties in interest under section 1109 and, as such, have an unconditional right to intervene in the Adversary Proceeding pursuant to Rule 24(a)(1). *See, e.g.*, *Brandt v. Hongkong and Shanghai Banking Corp. Ltd. (In re China Fishery Grp. Ltd. (Cayman))*, No. 16-11895, 2018 WL 6824074, at *3 (Bankr. S.D.N.Y. Dec. 27, 2018) (noting that section

11

1109(b) grants "parties in interest" a statutory right to intervene in an adversary proceeding, which includes committees). The Movants have met their burden of demonstrating grounds to intervene in the Adversary Proceeding pursuant to Rule 24(a)(1).

They have also demonstrated that they are entitled to intervene in the Adversary Proceeding under Rule 24(a)(2). To establish grounds to intervene in an action under Rule 24(a), in addition to timely seeking the relief, the applicant must (i) demonstrate an interest in the action, (ii) show an impairment of that interest arising from an unfavorable disposition, and (iii) have an interest not otherwise adequately protected. *See United States v. New York*, 820 F.2d 554, 556 (2d Cir. 1987); *see also SEC v. Berman*, No. 20-cv-10658, 2021 WL 2895148, at *2 (S.D.N.Y. June 8, 2021); *Medequa LLC v. O'Neill & Partners LLC*, No. 21-cv-6135, 2022 WL 3364294, at *2 (S.D.N.Y. July 26, 2022).

Intervention by the OCC, the UCC, and the Ad Hoc First Lien Group is warranted under Rule 24(a)(2) because the subject matter of the Adversary Proceeding may implicate the entitlements of holders of Present Private Opioid Claims, General Unsecured Claims, and Prepetition First Lien Indebtedness, respectively, under the Stipulation and the Resolution Term Sheets. If it is the successful bidder in the Proposed Sale, the Stalking Horse Bidder will credit bid its Prepetition First Lien Indebtedness to acquire substantially all of the Debtors' assets, including the Policies. Once purchased, the Stalking Horse Bidder will transfer the Policies to a trust established for the benefit of non-opioid unsecured creditors. To the extent the Adversary Proceeding impacts the Stalking Horse Bidder's proposed acquisition of the Policies, it directly concerns the transactions called for under the Resolution Term Sheets and the rights of the holders of Present Private Opioid Claims, General Unsecured Claims, and Prepetition First Lien Indebtedness.

Rule 24(c) of the Federal Rules of Civil Procedure requires all interveners to submit a pleading setting out "the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). "Where, however, the position of the movant is apparent from other filings and where the opposing party will not be prejudiced, Rule 24(c) permits a degree of flexibility with technical requirements." *Tachiona ex rel. Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 393 n.8 (S.D.N.Y. 2002). Here, the Court will waive the requirement, as the Movants are seeking to intervene in order to assert their rights under section 1109 of the Bankruptcy Code. *In re Adelphia Commc'ns Corp.*, 285 B.R. at 856 n.18.

The Court finds that the Movants have demonstrated grounds to intervene in the Adversary Proceeding pursuant to section 1109 of the Bankruptcy Code and Rule 24(a)(1) and (2). In making this determination, the Court finds no merit to the Omnibus Objection. The Plaintiff does not address the merits of the Motions or challenge the Movants' substantive rights to intervene in the Adversary Proceeding. Rather, the Omnibus Objection constitutes a premature challenge to the merits of the Proposed Sale. Finally, the Court attaches no weight to the Plaintiff's conclusory,

13

unsupported statements regarding the OCC and the role it has played to date in the Chapter 11 Cases.

## Conclusion

Based on the foregoing, the Court overrules the Omnibus Objection and grants the Motions.

**IT IS SO ORDERED.**

Dated:    New York, New York
         May 4, 2023

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge